UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 20-10244-RGS

UNITED STATES OF AMERICA

v.

ANTON LOPES

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

December 30, 2021

STEARNS, D.J.

Defendant Anton Lopes is charged with multiple drug and firearm offenses based on the fruits of a search warrant executed at his home on December 16, 2019. Lopes seeks to suppress the incriminating evidence, arguing that the warrant was issued without probable cause to believe that evidence of criminal activity would be found in his home. *See Sgro v. United States*, 287 U.S. 206, 210-211 (1932). After a hearing and a careful study of the parties' briefs, the court will grant the motion to suppress.

## BACKGROUND

The following facts are derived, as they must be, from the "four corners of the affidavit." *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999).

On December 31, 2017, Boston police offers responded to a radio call reporting shots fired in the Dorchester section of Boston. *See* Ball Aff. (Dkt # 156-2) at 6. When police arrived at the scene, they observed a gray vehicle that appeared to have been struck by gunfire. *Id*. The driver of the vehicle was unable to give officers a detailed description of the shooter or his vehicle. *Id*. A bystander, who insisted on anonymity, approached officers and told them that a red Honda sedan had driven up to the gray vehicle and that a verbal altercation between the occupants of the two cars had ensued. *Id*. The informant also stated that he had seen a red BMW pull in behind the gray vehicle. *Id*. A male exited the BMW, fired several gunshots into the rear of the gray vehicle, and then returned to the BMW and fled the scene. *Id*. None of the occupants of the gray vehicle was injured by the gunfire. *Id*.

Four months later, on March 27, 2018, Boston police arrested several members of the Wendover/NOB street gang for the unlawful possession of two firearms. *Id*. at 7-8. The Boston Police Firearms Analysis Unit later determined that the "signature" of one of the firearms matched the markings on the shell casings recovered at the scene of the December 31, 2017, shooting. *Id*. at 8. Police also learned from GPS ankle bracelet records that an associate of the Wendover/NOB gang, Joshua Teixeira, who was then on monitored release, had been electronically observed in the vicinity of the December

shooting.  *Id.* at 7.  Over the course of the investigation into the Wendover/NOB gang, officers had observed the defendant – a close friend of Teixeira – from time to time operating a red BMW registered in his mother's name.  *Id.* at 8.  The BMW was sold at a salvage auction in April of 2018 (twenty months before the search of Lopes's home) after it had been vandalized. *Id.* at 9.

On November 14, 2018, two Boston officers visited Lopes at his home in Quincy.  Lopes admitted the officers and agreed to an interview.  *Id.* at 8.  Lopes acknowledged that he was associated with the Wendover/NOB gang member who had been arrested on March 27, 2018, and that at in December of 2017, he regularly drove his mother's red BMW.  *Id.*  One of the officers falsely informed Lopes that video footage had captured the license plate number on the BMW at the time of the shooting.  *Id.*  The officer then asked Lopes who he thought was driving the car; Lopes "smil[ed] nervously" and did not answer.  *Id.* at 8-9.  The officer interpreted Lopes's silence "as an adoptive admission as to his role as the operator of the red BMW." *Id.* at 9.

Over a year later, on December 11, 2019, Boston Police Detective Brian Ball sought a warrant to search Lopes's residence for his iPhone 7 cellular telephone, and any documents related to the control and custody of the now-scrapped BMW.  *Id.* at 1.  In his affidavit, Ball opined that a search of Lopes's

property and person would likely result in "the recovery of important evidence" related to Lopes's role in the December 31, 2017, shooting. *Id.* at 12. The search warrant was issued by an assistant clerk-magistrate on December 13, 2019, and executed on December 16, 2019. *Id.* at 3-4. During the search of Lopes's home, police recovered firearms and ammunition, fentanyl, marijuana, $3,285 in cash, license plates, and a box for an iPhone 7 Plus. *Id.* at 3.

## DISCUSSION

The Fourth Amendment, which guarantees the "right of the people" to be secure from unreasonable government searches and seizures, provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A warrant is based on probable cause when "the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Aguirre*, 839 F.2d 854, 857-858 (1st Cir. 1988). Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). "The standard of probable cause is the probability, not a *prima facie* showing, of criminal activity." *United States v. Ciampa*, 793 F.2d 19, 22

(1st Cir. 1986); *see also Safford v. Unified Sch. Dist. of Redding*, 557 U.S. 364, 371 (2009). The magistrate issuing the warrant must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Ribiero*, 397 F.3d 43, 48 (1st Cir. 2005).

Whether a challenged warrant issued on a sufficient showing of probable cause is a question of law to be determined by the reviewing court. *Beck v. Ohio*, 379 U.S. 89, 96 (1964). In conducting such a review, the court's inquiry begins and ends with the "four corners of the affidavit." *Vigeant*, 176 F.3d at 569. "An affidavit supporting a search warrant is presumptively valid." *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013). And "[w]here, as here, a search is conducted pursuant to a warrant, the burden falls to the defendant to show the absence of probable cause by a preponderance of the evidence." *United States v. Heyer*, 2018 WL 6834591, at *1 (D. Mass. Dec. 27, 2018), citing *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

On its face, Detective Ball's affidavit fails to establish probable cause either that Lopes was involved in the December 31, 2017, shooting, or if he had been, that evidence of his involvement would be found in his home some two years after the fact. The prime justification for suspecting Lopes – namely,

5

that the shooter came to the scene in a red BMW and that Lopes then had access to a red BMW – is not sufficient to demonstrate a fair probability that Lopes was either the shooter or an accomplice. In *Cardwell v. Lewis*, 417 U.S. 583 (1974), the Court agreed that police had probable cause to search the defendant's vehicle, which was similar in make and model to the vehicle seen leaving the scene of a homicide. *Id.* at 592. However, the Court's holding was buttressed by two crucial additional facts directly linking the defendant (and his vehicle) to the crime: (1) the defendant had repair work done on his vehicle immediately following the victim's death, and (2) the victim's personal calendar contained a notation to call the defendant on the day of the victim's death. *Id.* at 587, 592.

Here, there are no similar facts linking Lopes to the shooting. That he associated with individuals who may have been involved in the shooting is not in and of itself incriminating. *See, e.g., United States v. Martinez-Molina*, 64 F.3d 719, 726 (1st Cir. 1995), quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *Commonwealth v. Kennedy*, 426 Mass. 703, 709 (1998) ("[M]ere association with another individual suspected of criminal activity is insufficient, standing alone, to support probable cause.").

Lopes's failure to respond to the officer's question about who he thought might have been driving the red BMW at the scene of the shooting does not cure the deficiency as, for among other reasons, it does not qualify as an "adoptive admission." "[T]he [adoptive admission] exception applies to any statement made in the presence of the defendant to which the defendant's response – whether by oral declaration, by gesture, or by revealing silence – objectively denotes the defendant's acceptance of the statement." *Commonwealth v. Babbitt*, 430 Mass. 700, 705 (2000). To be admissible, "it must be apparent that the party has heard and understood the statement, that he had an opportunity to respond, and that the context was one in which he would have been expected to respond to an accusation." *Commonwealth v. Olszewski*, 416 Mass. 707, 719 (1993). Here, Lopes's silence does not clear the first hurdle of the evidentiary test – the officer's question was not an accusation, but rather a speculative (or at best ironic) request for an opinion. *See United States v. Zaccaria*, 240 F.3d 75, 79 (1st Cir. 2001), quoting *United States v. Hale*, 422 U.S. 171, 176 (1975) ("In most circumstances silence is so ambiguous that it is of little probative force."); *cf. Commonwealth v. Nickerson*, 386 Mass. 54, 61 n.6 (1982) ("[A]n individual's failure to speak may be the result of his awareness that he has no obligation to speak, his caution

arising from knowledge that anything he says may be used against him, and his belief that efforts to exonerate himself would be futile.").

Even assuming for sake of argument that the affidavit did establish probable cause to believe that Lopes was involved in the shooting, it nevertheless failed to show a nexus between the alleged crime and the evidence sought.[1] As Lopes points out, the affidavit does not elucidate any particularized facts – aside from conclusory statements that an individual's phone may store text messages and locational data related to a crime – that would suggest that Lopes's phone is likely to contain incriminating information about a two-year-old crime. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there

---

[1] Additionally, the court notes that the information recited in the affidavit is stale. "[A]n affidavit supporting a search warrant must contain timely information or else it will fail." *United States v. Schaefer*, 87 F.3d 562, 568 (1st Cir. 1996). The magistrate must "consider[ ] various factors, including 'the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information' in assessing the information's ripeness." *United States v. Tiem Trinh*, 665 F.3d 1, 13 (1st Cir. 2011), quoting *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008). In the intervening two years between the shooting and the issuance of the search warrant, Lopes sold the red BMW and replaced his iPhone 7 with an updated iPhone 11. Aside from the speculation that Lopes may have transferred his data from his old phone to his new phone via the "cloud," Ball Aff. at 10, the affidavit does not plausibly demonstrate how the items sought – the now-replaced iPhone 7 and documents relating to a disposed vehicle – would shed evidentiary light on a crime that took place two years before the search.

is reasonable cause to believe that the specific 'things' to be searched for and seized are located in the property to which entry is sought." *Commonwealth v. Molina*, 476 Mass. 388, 396 (2017), quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1975).

    As the last arrow in its quiver, the government contends that if the court should find probable cause lacking, it should nonetheless validate the search under the "good faith" exception to the exclusionary rule. In *United States v. Leon*, 468 U.S. 897 (1984), the Court weighed the marginal benefits produced by suppressing evidence obtained in reasonable reliance on a later invalidated search warrant against the "substantial social costs" inherent in the resulting distortion of the truth-finding function and the consequent potential for "generat[ing] disrespect for the law and administration of justice." *Id.* at 907-908. Justice White, the author of the majority opinion in *Leon*, in carving out the exception, noted that the Court had "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment," and that this "is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 918, 920. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to

the deterrence of Fourth Amendment violations." *Id.* at 921; *see United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007) (suppression is not an appropriate remedy "where an objectively reasonable law enforcement officer relied in good faith on a defective warrant").

Justice White also delineated examples of "bad faith" reliance on a warrant that would merit the exclusion of evidence. Of relevance in this case is his observation that "[t]he exception we recognize today will . . . not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . . Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (*citations omitted*). *See Malley v. Briggs*, 475 U.S. 335 (1986) (officer who obtained an arrest warrant on facts that no objectively reasonable officer could have thought to have constituted probable cause could be held personally liable for civil damages); *United States v. Hove,* 848 F.2d 137, 139-140 (9th Cir. 1988) (good faith could not save a warrant where the supporting affidavit omitted any evidence connecting the defendant to the premises to be searched).

Such is the case here. As previously discussed, the facts that the affidavit provides to support its conclusion that Lopes was likely the shooter in the 2017

10

incident are based on speculation and weak (and largely unsupported) inferences. The significant – and unexplained – lapse in time between the crime and the search warrant's issuance further underscores the affidavit's plain lack of any indicia of probable cause. Accordingly, the good faith exception to the exclusionary rule does not apply.[2]

## ORDER

For the foregoing reasons, Lopes's motion to suppress is GRANTED.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[2] Should the First Circuit disagree with my decision, I will briefly address Lopes's contention that the officers' search exceeded the scope of the warrant by extending the search from the targeted iPhone and motor vehicle documents to the drugs and guns they encountered on the premises. The government's answer, with which I agree, is that the officers' actions, once on the premises, were justified by the plain view doctrine. *See Horton v. California*, 496 U.S. 128, 133-134 (1990). Plain view, however, is a doctrine justifying seizures and not searches. For a "plain view" seizure to be valid, there are two mutually dependent prerequisites: (1) a prior valid intrusion by officers into a constitutionally protected area; and (2) an "immediate" recognition of the item's evidentiary significance (that is, probable cause for its seizure). *See generally Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (*plurality opinion*). "Plain view" in other words is best understood not as an exception to the warrant requirement but as an extension of the prior justification that brings an officer without a warrant into the presence of evidence or contraband. *Texas v. Brown*, 460 U.S. 730, 738-739 (1983) (*plurality opinion*). Here the officers fail to meet the first prerequisite of the doctrine, that is, the lawful intrusion into Lopes's home.